IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


LEE MATHIESON,                                    Civ. No. 07-6090-AA

       Plaintiff,                              OPINION AND ORDER

   v.

YELLOW BOOK SALES AND
DISTRIBUTION COMPANY, INC.,
a Delaware corporation, dba
YELLOW BOOK USA, dba YELLOW
BOOK, and TAMARA YOUNG,

      Defendants.

_____

Kevin T. Lafky
Larry L. Linder
Haley Percell
Laftky & Lafky
429 Court Street NE
Salem, OR 97301
   Attorneys for plaintiff

Carol J. Bernick
Nicholas A. Kampars
Davis Wright Tremaine LLP
1300 S.W. Fifth Avenue, Suite 2300
Portland, Oregon 97201
   Attorney for defendants


1 - OPINION AND ORDER

AIKEN, Judge:

Plaintiff filed suit alleging age discrimination, hostile work environment, and retaliation in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S. § 621, *et seq.*, and Or. Rev. Stat. § 659A.030, violations of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.,* and the Oregon Family Leave Act (OFLA). Or. Rev. Stat. § 659A.165, and state common law claims of wrongful discharge, intentional infliction of emotional distress (IIED), and reckless infliction of emotional distress (RIED). Defendants move for summary judgment on all claims. The motion is granted.

## I.  BACKGROUND

During the summer of 2005, defendant Yellow Book acquired Transwestern Publishing.  At the time, plaintiff was an Account Executive for Transwestern, and Yellow Book retained plaintiff in the same position.  Plaintiff was seventy years old.  Plaintiff's duties included selling advertising space in the company's telephone directories and maintaining existing advertising accounts.  Deposition of Lee Mathieson (Mathieson Dep.), p. 15 (attached as Ex. 1 to Declaration and Supplemental Declaration of Nicholas Kampars (Kampars Decl.) and Declaration of Haley Percell (Percell Decl.)).

In November or December 2005, defendant Tamara Young became the District Sales Manager of Yellow Book's Salem, Oregon office. Young supervised plaintiff and other Account Executives.

In January 2006, plaintiff approached Young to request family

2 - OPINION AND ORDER

medical leave to care for his wife after she underwent surgery. Young referred plaintiff to Erin Dempsey, Yellow Book's leave of absence coordinator. Dempsey conferred with plaintiff, signed the request for leave form and sent it to plaintiff for his signature. Dempsey also sent plaintiff a medical certification form that was to be completed by his wife's physician and returned to Yellow Book by February 16, 2006.

The request for leave form included several conditions for taking medical leave. For example, the form stated that the employee must submit a signed medical certification to verify the need for family or medical leave, and that Yellow Book would accept the voluntary resignation of any employee who did not submit the medical certification by a certain date. See Purcell Decl., Ex. 7. Further, the form indicated that the employee was subject to termination for engaging in other employment while on medical leave. Id.

Plaintiff began his leave on February 2, 2006, as indicated on the request for leave form. However, plaintiff did not submit the documents to Yellow Book.

On February 9, 2006, Dempsey contacted plaintiff, because she had not received the medical certification for his wife's surgery. Plaintiff told her that he had not received the paperwork. Dempsey sent another request for leave form and medical certification, and plaintiff received the forms on February 10, 2006.

The same day, plaintiff signed the request for leave form and took the medical certification to his wife's physician. Plaintiff

3 - OPINION AND ORDER

apparently assumed that the physician mailed the paperwork to Yellow Book, but Yellow Book did not receive the certification.

In March 2006, Young and Brad Barr, her supervisor, were informed by two Yellow Book employees that plaintiff was working for a different employer while on medical leave. Deposition of Tamara Young (Young Dep.), pp. 45-46 (attached as Ex. 2 to Percell Decl.); Deposition of Brad Barr (Barr Dep.), pp. 13-14, 19-20 (attached as Ex. 3 to Percell Decl.). The employees reported that an existing Yellow Book customer reported being contacted by plaintiff on behalf of Fanfare Media Works (Fanfare), a company that sells advertising space on grocery store receipts. Barr telephoned plaintiff, posing as a potential Fanfare customer, and inquired about Fanfare's services. In response, plaintiff offered to sell Barr advertising space on behalf of Fanfare. Barr Dep., pp. 14-15.

Yellow Book subsequently discovered that plaintiff had become a salesperson for Fanfare in November 2005. Mathieson Dep., pp. 41-42. Plaintiff signed an independent contractor agreement, a sales material agreement, and a W-9 tax form with Fanfare. Mathieson Dep., pp. 44-45. Additionally, plaintiff visit potential customers with Dan Grove, a Fanfare employee and former Yellow Book employee, and received compensation for his services. Mathieson Dep., pp. 46-47.

Barr and Young reported to Yellow Book Human Resources that plaintiff was working for another employer while on medical leave with Yellow Book. Young Dep., p. 48; Barr Dep., pp. 17-19, 27-28.

On March 27, 2006, Dempsey e-mailed Kara Krueger, Yellow Book's Human Resources Manager in Cedar Rapids, Iowa, to report that plaintiff was engaged in other employment while on medical leave and had failed to return the medical certification for his wife's condition.  Percell Decl., Ex. 19.  Young was asked to document the information regarding plaintiff's outside employment, and she sent the information via facsimile to Krueger.  Percell Decl., Exs. 18; Young Dep., p. 48.

On March 28, 2006, Krueger telephoned plaintiff and informed him that his employment with Yellow Book was terminated for violating leave policies by working for another company while on medical leave and by failing to return the medical certification for his wife's surgery.  Krueger Dep., p. 17; Mathieson Dep., p. 58; Percell Decl., Ex. 17.  Approximately one hour later, plaintiff's wife's physician sent the medical certification to Yellow Book.[1]  Kampars Decl., Ex. 5.

On March 31, 2006, Krueger sent plaintiff a letter informing him that he had not timely submitted the medical certification required for his medical leave and that Yellow Book was accepting his voluntary resignation as of March 28, 2006.

On April 27, 2007, plaintiff filed this lawsuit.

## II.  STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[1]However, according to the certification, plaintiff's wife's surgery had been cancelled.  Kampars Decl., Ex. 5.

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

<u>III. DISCUSSION</u>

Plaintiff alleges claims against both Yellow Book and Young, his former supervisor. Against Yellow Book plaintiff alleges claims of age discrimination, retaliation and hostile work environment under the ADEA and Or. Rev. Stat. § 659A.030,

6 - OPINION AND ORDER

interference and discrimination under the FLMA, retaliation under OFLA, wrongful discharge, intentional infliction of emotional distress and reckless infliction of emotional distress. Against Young, plaintiff alleges claims of age discrimination/coercion under Or. Rev. Stat. § 659A.030(1)(g) and intentional infliction of emotional distress.

Defendants move for summary judgment with respect to plaintiff's claims for age discrimination and family medical leave violations, arguing that no evidence suggests that Yellow Book or Young discriminated, harassed, or retaliated against plaintiff based on his age or invocation of medical leave. With respect to plaintiff's tort claims, defendants argue that plaintiff fails to establish conduct to support claims for IIED or RIED.

A.  Age Discrimination Claims

Plaintiff alleges age discrimination claims under the ADEA and Oregon statute, claiming that defendants discriminated against him and terminated his employment because of his age. Plaintiff maintains that he was treated differently and retaliated against because of his age and his complaints of age discrimination, and that he was subject to a hostile work environment.

1.  Disparate Treatment

To establish a prima facie case of age discrimination based on disparate treatment, plaintiff must demonstrate that he was: 1) at least forty years old; 2) performing his job satisfactorily; 3) discharged; and 4) replaced by a substantially younger employee with equal or inferior qualifications "or discharged under

7 - OPINION AND ORDER

circumstances otherwise 'giving rise to an inference of age discrimination.'" <u>Diaz v. Eagle Produce Ltd. Partnership</u>, 521 F.3d 1201, 1207 (9th Cir. 2008) (quoting <u>Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271, 1281 (9th Cir. 2000)). Once a plaintiff presents a prima facie case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged employment action. <u>Diaz</u>, 521 F.3d at 1211-12. If the employer does so, the plaintiff must present evidence that the articulated reason is pretextual, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." <u>Chuang v. Univ. of Calif. Davis, Bd. of Trustees</u>, 225 F.3d 1115, 1124 (9th Cir. 2000) (quoting <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981)).

Ultimately, plaintiff must show that his age "'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome.'" <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 141 (2000) (quoting <u>Hazen Paper Co. v. Biggins</u>, 507 U.S. 604, 610 (1993)).

It is undisputed that plaintiff was over forty years and was terminated. Defendants produce some evidence that plaintiff did not perform his job satisfactorily, but at the same time, defendants maintain that plaintiff was not dismissed for his work performance. Therefore, construing all inferences in plaintiff's favor, I assume, without deciding, that plaintiff performed his job satisfactorily or that issues of fact preclude summary judgment on

this basis.  However, plaintiff presents no evidence that he was replaced by a younger employee or that the circumstances surrounding his dismissal give rise to an inference of discrimination.

To support his claims of age discrimination, plaintiff relies on the following:

1) Young "harassed and micro-managed" him and required him to prepare a productivity report;

2) Young asked plaintiff, "Are you working because you have to or because you want to?";

3) Young made a comment about plaintiff's "generation" when discussing a "certain wording";

4) plaintiff's former supervisor, Bruce Slater, told plaintiff that Yellow Book wanted younger workers.  Mathieson Dep., pp. 19-22, 30-32, 73.  I do not find that these facts create an inference of discrimination.

Importantly, plaintiff's age discrimination claims all stem from his interactions with Young and no other Yellow Book employee. Mathieson Dep., p. 32.  However, aside from reporting plaintiff's employment with Fanfare to Human Resources (as directed by her supervisor), Young was not involved in the decision to terminate plaintiff.  Declaration of Tamara Young (Young Decl.), p. 2; Young Dep., pp. 36, 48; Declaration of Kara Krueger (Krueger Decl.), p. 2; Deposition of Kara Krueger (Krueger Dep.), pp. 31-33 (attached as Ex. 5 to Percell Decl.); Barr Dep., pp. 33-34.  Plaintiff had no previous interactions with Dempsey or Krueger and admitted during

his deposition that neither women treated him poorly or knew of Young's alleged discriminatory animus or his age. Mathieson Dep., pp. 51, 58. More importantly, plaintiff has no evidence that Krueger or Dempsey themselves were motived by discriminatory animus when they terminated plaintiff's employment. Mathieson Dep., pp. 51, 58-59, 84.

Plaintiff contends that Krueger's deposition testimony creates an issue of fact regarding Young's involvement in plaintiff's termination, because Krueger could not recall whether others were involved in the decision to terminate plaintiff. Krueger Dep., pp. 23-24. However, Krueger explained that she might confer with her supervisor when faced with a termination decision. Krueger Dep., p. 25. Further, Krueger was not directly asked whether Young was involved with the decision, and no evidence suggests that Young, in fact, participated in the decision to terminate plaintiff. Mathieson Dep., pp. 56-58; Barr Dep., pp. 33-34, 52-53; Percell Decl., Exs. 15-19.

Moreover, plaintiff fails to identify specific instances where he was "harassed" or "micro-managed" by Young, aside from being required to prepare an activity report. Mathieson Dep, pp. 30-31. However, Young required that all Account Executives prepare such a report, and plaintiff presents no evidence that Young treated younger Account Executives differently than plaintiff. Mathieson Dep., pp. 22-24, 32-33; Young Decl., p. 1.[2] Further, plaintiff has

---

[2]A former Yellow Book employee, Dan Grove (who recruited plaintiff to work for Fanfare) avers that he was not subjected to

no evidence that Yellow Book, in fact, terminated older workers or refused to hire older applicants, and plaintiff is unaware of any person over sixty who applied for a position with Yellow Book and was not hired. Mathieson Dep., p. 20. Bruce Slater's comments to plaintiff are inadmissible hearsay and unsupported by any evidence, particularly when Slater was terminated in 2004. Krueger Decl., p. 3. Thus, the sum total of plaintiff's evidence of age discrimination boils down to two comments by Young – one referencing his generation and the other questioning his reason for working.

Even if Young's comments could establish an inference of discrimination and be imputed to Krueger and Dempsey, defendants have produced undisputed evidence of a legitimate, non-discriminatory reason for plaintiff's termination: plaintiff's unauthorized employment with FanFare, a competitor, while on medical leave with Yellow Book. Mathieson Dep., pp. 40-42; Kampars Decl., Exs. 2-4. It is undisputed that plaintiff signed a contract and performed services for Fanfare and received payment for those services. Mathieson Dep., pp. 46-47. Further, when Barr called plaintiff in March 2006, plaintiff offered to sell him advertising space on behalf of FanFare. Barr Dep., pp. 14-15; Mathieson Dep., pp. 42-43. After being informed that his employment was

---

Young's micromangement. Percell Decl., Ex. 12; Mathieson Dep., p. 44. However, Grove was a Yellow Book Assistant Manager rather than an Account Executive and was not supervised by Young. Mathieson Dep., p. 14. Therefore, Grove's statement does not create a triable issue of fact.

terminated, plaintiff maintains that he recognized Barr's voice and was just "joking" with him, but he did not call Young or Barr with this explanation. Mathieson Dep., pp. 42-43; Barr Dep., pp. 14-15. Thus, it is undisputed that defendants believed plaintiff was working for another employer while on medical leave with Yellow Book, and - as stated on the request for leave form signed by plaintiff - his unauthorized employment provided cause for termination.

Defendants also rely on the fact that plaintiff did not return the medical certification for his wife's surgery in a timely manner. Plaintiff's failure to return the medical certification also provides a legitimate, non-discriminatory reason for plaintiff's termination, especially when plaintiff produces no evidence that younger employees remained employed after failing to submit required medical certification for their leave.

In sum, plaintiff fails to establish that the circumstances of his termination give rise to an inference of age discrimination or that Yellow Book's legitimate, non-discriminatory reasons for his termination were pretextual.

<u>    2.  Retaliation</u>

The ADEA prohibits retaliation against employees for complaining of discrimination or participating in a ADEA investigation or proceeding. 29 U.S.C. § 623(d). In order to establish a prima facie case of retaliation, plaintiff must demonstrate that: 1) he engaged in a protected activity; 2) his employer subjected him to an adverse employment action; and 3) a

causal link exists between the protected activity and the adverse employment action. Thomas v. City of Beaverton, 379 F.3d 802, 811 (9th Cir. 2004); Wallis v. J.R. Simplot Co., 26 F.3d 885, 891 (9th Cir. 1994).

However, it is undisputed that plaintiff did not engage in a protected activity under the ADEA. During his deposition, plaintiff conceded that he never complained to Young or any other person that Young or any Yellow Book employee was treating him differently or discriminating against him because of his age. Mathieson Dep., pp. 31, 51, 59, 70-72.[3]  Therefore, plaintiff cannot establish a prima facie case of retaliation.

3.  Hostile Work Environment

A claim for hostile work environment is cognizable under the ADEA if the alleged discriminatory conduct is pervasive and severe. To prevail on a hostile workplace claim premised on age, plaintiff must show that: 1) he was subjected to verbal or physical conduct related to his age; 2) the conduct was unwelcome; and 3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment. See, e.g., Vasquez v. County of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003).

In determining whether alleged harassment is severe and

---

[3]Plaintiff testified that he once complained to Young about her management style, and she responded "other people that have told me that are no longer here." Mathieson Dep., pp. 22, 71. However, plaintiff admits he did not complain to anyone of age discrimination.

pervasive, the court examines the "frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). "Simple teasing, offhand comments, and isolated incidents" do not rise to the level of severe and pervasive harassment. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (citations omitted).

Here, plaintiff alleges that Young "micro-managed" him and made "snide" and "critical" remarks. Mathieson Dep., pp. 21, 63-65. When asked to be specific, plaintiff testified that on one occasion Young referred to his "generation," and on another asked if plaintiff was working because he wanted to or because he had to. Mathieson Dep., pp. 21, 73. Put simply, such conduct falls far short of "severe," "pervasive," and "abusive" and fails to establish a hostile work environment. See Vasquez, 349 F.3d at 634; Manatt v. Bank of America, NA, 339 F.3d 792, 799 (9th Cir. 2003) (citing cases).

### 4. Coercion

Plaintiff alleges a claim of age discrimination coercion against defendant Young under Or. Rev. Stat. § 659A.030(1)(g). Under that provision, it is unlawful for any person "to aid abet, incite, compel or coerce the doing of any acts forbidden by this chapter. . . ." Plaintiff claims that Young coerced Yellow Book's discriminatory conduct and termination of his employment. However, because I find that plaintiff fails to establish age discrimination

14 - OPINION AND ORDER

on the part of those who terminated his employment, plaintiff's claim of coercion must fail.

B.  Family and Medical Leave Claims

      1. FMLA Interference

      Plaintiff alleges that his termination was motivated in part by his use of protected medical leave.  The FMLA "creates two interrelated, substantive employee rights: first, the employee has a right to use a certain amount of leave for protected reasons, and second, the employee has a right to return to his or her job or an equivalent job after using protected leave." Bachelder v. America West Airlines, Inc., 259 F.3d 1112, 1122 (9th Cir. 2001).  Thus, the Ninth Circuit has reasoned that an employer's attachment of negative consequences to an employee's exercise of medical leave rights "tends to chill," and therefore interferes with, the employee's willingness to exercise those rights.  Id. at 1124 ("By their plain meaning, the anti-retaliation or anti-discrimination provisions do not cover visiting negative consequences on an employee simply because he has used FMLA leave.").  Employers are thus prohibited from weighing the exercise of FMLA rights as a negative factor in disciplinary employment actions.  Id. at 1125; 29 C.F.R. § 825.220(c).[4]

_____

[4]In Bachelder, the Ninth Circuit described FMLA claims for "retaliation" or "discrimination" as those where an employer is accused of discriminating against an employee for opposing practices made unlawful by the FMLA, or for instituting or participating in FMLA proceedings or inquiries.  259 F.3d at 1124. The McDonnell Douglas burden-shifting framework applies to claims for retaliation and/or discrimination but is inapplicable to FMLA interference claims.  Bachelder, 259 F.3d at 1125.

15 - OPINION AND ORDER

Accordingly, to survive summary judgment, plaintiff must show that his use of FMLA-protected leave was a negative factor in Yellow Books' decision to terminate his employment. Gambini v. Total Renal Care, Inc., 486 F.3d 1087, 1096 (9th Cir. 2007); Mortenson v. Pacificorp, 2007 WL 405873, *16 (D. Or. 2007) (citing (citing Bachelder, 259 F.3d at 1125).

It is undisputed that plaintiff was terminated the week before he was scheduled to return from medical leave. However, the timing of plaintiff's termination is the only evidence that arguably supports plaintiff's claim. Mathieson Dep., p. 62. It is undisputed that defendants granted plaintiff's request for FMLA leave without incident, and there is no evidence in the record that defendants otherwise discouraged the use of FMLA leave. Mathieson Dep., pp. 50-52. In fact, Yellow Book provided plaintiff with a second opportunity to return the medical certification for his requested leave, even though it was untimely. Notably, plaintiff did not complain and does not allege that he was treated poorly or differently because he requested medical leave. Mathieson Dep., pp. 62, 71-72.

Finally, defendants have produced evidence that plaintiff was under contract and employed by another advertising sales company during his medical leave, a clearly-stated cause for termination on the request for leave form.

Construing the evidence in the light most favorable to the plaintiff, I am unconvinced that a reasonable juror could find that Yellow Book considered plaintiff's use of protected medical leave

16 - OPINION AND ORDER

as a negative factor in its decision to terminate his employment.

## 2. OFLA Retaliation

Plaintiff also alleges retaliation under OFLA. The analysis of an OFLA retaliation claim differs from that of an FMLA interference claim. To establish his prima facie case of retaliatory discharge under OFLA, plaintiff must show: 1) he availed himself of a protected right; 2) he was adversely affected by an employment decision; and 3) a causal connection between the two actions. Price v. Multnomah Co., 132 F. Supp. 2d 1290, 1296 (D. Or. 2001); see also Yeager v. Providence Health System Oregon, 195 Or. App. 134, 96 P.3d 862 (2004) (finding that the plaintiff alleged adequately alleged that she was discharged in retaliation for invoking OFLA).

Defendants do not dispute that plaintiff meets the first two elements of his prima facie case. Rather, defendants assert that the only evidence of causation is the timing of plaintiff's termination, and that this evidence is insufficient to defeat summary judgment. For the reasons explained above, I agree and find that plaintiff fails to raise a genuine issue of fact that a causal connection existed between plaintiff's leave and his termination, particularly when plaintiff did not allege or complain that he was treated poorly or differently because he invoked his right to take medical leave.

## C.   State Common Law Claims

Finally, plaintiff alleges state common law claims of wrongful discharge, intentional infliction of emotional distress (IIED) and

reckless infliction of emotional distress (REID).

1.  Wrongful Discharge

A wrongful discharge claim "arises when an employer violates a duty imposed by an established public policy." Schram v. Albertsons, Inc., 146 Or. App. 415, 426, 934 P.2d 483 (1997). Generally, claims for wrongful discharge are allowed: "(1) when an employee is fired for performing an important public duty or societal obligation, and (2) when an employee is fired for exercising private statutory rights that relate to the employment and that reflect an important public policy." Ryan v. Patterson Dental Supply, Inc., 2000 WL 640859, *26 (D. Or. 2000) (citation omitted).

Plaintiff claims that he was terminated because of his complaints about age discrimination and his medical leave. However, it is undisputed that during his employment, plaintiff made no complaint of discrimination based on his age or taking of medical leave. Mathieson Dep., pp. 51, 59, 62, 70-72. Therefore, plaintiff cannot establish wrongful discharge as a matter of law.

2.  Intentional Infliction of Emotional Distress

To establish a claim for IIED, a plaintiff must show that: 1) defendant intended to cause plaintiff severe emotional distress or knew with substantial certainty that the conduct would cause such distress; 2) defendant's conduct extraordinarily transgressed the bounds of socially acceptable behavior; and 3) plaintiff in fact suffered severe emotional distress. McGanty v. Staudenraus, 321 Or. 532, 550-51, 901 P.2d 841 (1995); Checkley v. Boyd, 198 Or.

18 - OPINION AND ORDER

App. 110, 124, 107 P.3d 651 (2005).

Termination of an employee, even if wrongfully motivated, generally does not transgress the bounds of socially tolerable behavior. Patton v. J.C. Penney Co., 301 Or. 117, 123, 719 P.2d 854, 857 (1986). Likewise, behavior that is merely "rude, boorish, tyrannical, churlish, and mean" will not support IIED liability. Id. at 124, 719 P.2d 858; Hetfeld v. Bostwick, 136 Or. App. 305, 308, 901 P.2d 986 (1995) (the tort of IIED "does not provide recovery for the kind of temporary annoyance or injured feelings that can result from friction and rudeness among people in day-to-day life"). Rather, the conduct must be "outrageous in the extreme." Hetfeld, 136 Or. App. at 308.

Here, plaintiff alleges that Young made "snide remarks," "micromanaged" his work activities, once referenced his "generation," and once asked if he worked because he had to. Mathieson, Dep., pp. 21, 73. In other words, plaintiff found Young "critical" and "unpleasant." Mathieson Dep., pp. 63, 65. Plaintiff's vague allegations do not come close to the level of conduct that "extraordinarily" transcends the boundaries of socially acceptable behavior under Oregon law. Rather, plaintiff's claim reveal nothing more than a dispute over personality and management styles - conduct that Oregon courts have found insufficient to support an IIED claim. See Wheeler v. Marathon Printing, 157 Or. App. 290, 307-08, 974 P.2d 207 (1998) (employer's alleged failure to respond to claims of harassment was insufficient to support an IIED claim); see also Watte v. Edgar Maeyans, Jr.,

19 - OPINION AND ORDER

M.D., P.C., 112 Or. App. 234, 237, 239, 828 P.2d 479 (1992)
(accusing employees of being liars and saboteurs did not support
claim for IIED); Snyder v. Sunshine Dairy, 87 Or. App. 215, 217-
218, 742 P.2d 57 (1987) (allegations that employer publicly
ridiculed plaintiff and unjustly criticized work performance did
not rise to the level of intolerable conduct).

　　　3.  Reckless Infliction of Emotional Distress

　　　A plaintiff may recover for RIED damages under three specific
circumstances in Oregon.  See, e.g., Navarette v. Nike, Inc., 2007
WL 221865, *4 (D. Or. Jan. 26, 2007) (discussing when damages may
be recovered for RIED in Oregon).  A plaintiff may recover under
RIED when accompanied by a physical injury, when there is a duty to
protect against psychological harm, and when the defendant's
"conduct infringes on a plaintiff's legally protected interest."
Rathgeber v. Hemenway, Inc. 335 Or. 404, 414, 69 P.3d 593 (2003);
Shin v. Sunriver Preparatory Sch., Inc., 199 Or. App. 352, 368-69,
111 P.3d 762 (2005) (holding that school owed a heightened duty of
care to student to protect from negligently inflicted emotional
harm).

　　　Plaintiff relies on Conway v. Pac. Univ., 129 Or. App. 307,
310, 879 P.2d 201 (1994) for the proposition that an employee may
recover against an employer for REID.  However, the Oregon Supreme
Court has held that an employment relationship does not bear on the
level of intent necessary to establish liability for emotional
distress.  McGanty, 321 Or. at 548-50, 901 P.2d 841.  In Conway,
the Oregon Court of Appeals relied on Bodewig v. K-mart, Inc., 54

20 - OPINION AND ORDER

Or. App. 480, 635 P.2d 657 (1981) - the reasoning of which was expressly rejected in McGanty.  See Navarette, 2007 WL 221865 at *3; see also Snead v. Metro. Prop. & Cas. Ins. Co., 909 F. Supp. 775, 779 (D. Or. 1996) (recognizing that Oregon law does not permit a RIED claim in an employment dispute).

Regardless, for the reasons explained above, plaintiff fails to establish socially intolerable behavior by defendants to support a RIED claim.

CONCLUSION

Defendants' Motion for Summary Judgment (doc. 24) is GRANTED, and defendants' motion to strike (doc. 49) is DENIED as moot.  This action is DISMISSED.

IT IS SO ORDERED.

Dated this  21  day of July, 2008.


_____/s/ Ann Aiken_____
                        Ann Aiken
                United States District Judge


21 - OPINION AND ORDER